**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Josephine Amatucci

     v.                                 Civil No. 05-cv-259-SM

Charles Hamilton, et al.

**REPORT AND RECOMMENDATION**

Before the Court is Josephine Amatucci's complaint[1] alleging

a number of claims, including her claim that the defendants have

violated her Fourth and Fourteenth Amendment rights to due

---

[1]Amatucci has filed a complaint (document no. 1), and three documents titled "Addendum to Complaint" (document nos. 7, 9 & 11). Although not strictly in compliance with the court's local rules governing "Motions to Amend," see Rule 15.1 of the Local Rules of the United States District Court for the District of New Hampshire ("LR"), I will accept these four documents in the aggregate as the complaint in this matter. Amatucci is advised, however, that all further amendments must comport with the local rule, which states:

> (a) A party who moves to amend a filing shall (i) attach the proposed amended filing to the motion to amend, (ii) identify in the motion or a supporting memorandum any new factual allegations, legal claims, or parties, and (iii) explain why any new allegations, claims, or parties were not included in the original filing.

> (b) Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, shall reproduce the entire filing as amended and may not incorporate any prior filing by reference, except by leave of court.

LR 15.1.

process by subjecting her to false arrest and detention.  Because

Amatucci is proceeding both *pro se* and *in forma pauperis*, the

matter is before the Court for preliminary review to determine

whether the complaint states any claim upon which relief might be

granted.  <u>See</u> 28 U.S.C. § 1915(e)(2); LR 4.3(d)(1)(B).

Standard of Review

Under this Court's local rules, when a nonincarcerated

plaintiff commences an action both *pro se* and *in forma pauperis*,

the magistrate judge is directed to conduct a preliminary review

and to prepare a report and recommendation determining whether

the complaint or any portion thereof should be dismissed because:

> the allegation of poverty is untrue, the action is
> frivolous, malicious, or fails to state a claim upon
> which relief may be granted, or seeks monetary relief
> from a defendant who is immune from such relief under 28
> U.S.C. § 1915(e)(2); or it fails to establish subject
> matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

LR 4.3(d)(1)(B).  In conducting the preliminary review, the Court

construes *pro se* pleadings liberally.  <u>See</u> <u>Ayala Serrano v.</u>

<u>Lebron Gonzales</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following

<u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) to construe *pro se*

pleadings liberally in favor of the *pro se* party).  "The policy

behind affording *pro se* plaintiffs liberal interpretation is that

if they present sufficient facts, the court may intuit the

2

correct cause of action, even if it was imperfectly pled." <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997), <u>cert. denied</u>, <u>Ahmed v. Greenwood</u>, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that *pro se* pleadings are given fair and meaningful consideration.  <u>See</u> <u>Eveland v. Dir. of C.I.A.</u>, 843 F.2d 46, 49 (1st Cir. 1988).

<u>Background</u>

Josephine Amatucci is a resident of Wolfeboro, New Hampshire.  She has lived at her property there for twelve years.  During that time, Amatucci has waged an ultimately successful campaign to have the Town of Wolfeboro recognize her right to restrict parking in front of her residence, although she lives on a road that provides public beach parking.  Prior to receiving official sanction for her parking rights, however, Amatucci frequently found herself at odds with both the local police and

her neighbors regarding the location of parked cars in relation
to her property.  On more than one occasion, Amatucci found
herself requesting help from the police to prevent cars from
blocking her driveway, but not receiving the requested help
because the police were under the impression that Amatucci was
attempting to control access to public parking.  Ultimately,
these and other run-ins involving the neighbors' use of her
property resulted in Amatucci having a contentious relationship
with her neighbors and the Wolfeboro Police Department.

The August 16, 2002 Incident

     On August 16, 2002, at 5:00 p.m., Amatucci noticed that
Kelly Fitzgerald, a relative of one of her neighbors, parked her
car in a manner that blocked Amatucci's driveway.  Amatucci asked
Fitzgerald to move her car, but Fitzgerald refused.  Amatucci
called the police.  A boy who was a member of Amatucci's
neighbor's family, and who appeared to be too young to legally
drive, then got into Fitzgerald's car and attempted to move it.
In the process, the boy hit a cinder block that Amatucci had
placed on the ground to protect people from an iron mailbox rod
she had placed in the ground but that did not yet have a mailbox
on it.  When the boy hit the cinder block, it shattered,

4

resulting in a small piece of the block lodging itself in the car's wheel well so that the car couldn't move.  When Amatucci expressed her amusement at this turn of events, four members of Amatucci's neighbor's family, including Fitzgerald, came onto Amatucci's driveway and proceeded to kick and punch Amatucci and throw stones at her.

Amatucci got away from the individuals who were assaulting her and ran inside her house to call the Wolfeboro Police Department for assistance.  In response to her call, Officer Charles Hamilton responded to the scene while the neighbors were still present in Amatucci's driveway.  Amatucci told Hamilton that she wanted to press criminal charges against her attackers. Instead of assisting her as a crime victim, however, Amatucci reports that Hamilton yelled at her.  Because of Hamilton's reaction, Amatucci again called the Wolfeboro Police Department and spoke with Wolfeboro Police Chief Brian Black who seemed to be sympathetic to Amatucci's complaints and offered to help resolve the difficulties that Amatucci had with Hamilton. However, Amatucci claims that Black did not follow through on his promise to assist her and, in fact, she did not hear from him again regarding this matter.

5

The Wolfeboro Police subsequently took the position that Amatucci was the aggressor against her neighbors and sought to prosecute her for damage to Fitzgerald's car and for assault. Hamilton obtained a warrant to arrest Amatucci on those charges and, on November 7, 2002, Hamilton entered Amatucci's home and arrested her on criminal mischief and assault charges pursuant to that warrant.[2]

Amatucci claims that Hamilton must have failed to present exculpatory evidence to the judge issuing the arrest warrant, specifically, Amatucci's version of events and the statement of an impartial witness to the events of August 16, 2002. Further, Amatucci alleges that Hamilton falsely obtained the warrant by stating to the judge that a cinder block had been placed on the wheel well by Amatucci, damaging the car, when in fact he had simply seen a fragment of cinder block inside the wheel well after the fact, as Hamilton later confirmed.

Amatucci states that after being arrested, she went to the Wolfeboro Police Department to confront Black regarding her

---

[2]The complaint alleges initially that Hamilton was not in possession of a valid warrant. However, Amatucci has appended an affidavit from Judge Varney to her complaint stating that the warrant was, in fact, signed and issued by Judge Varney on October 30, 2002 while he was at his law offices.

objection to being prosecuted.  Amatucci claims that Black did

not answer her and that Officer James O'Brien was present and

that he stood by during the confrontation with his hand resting

on his gun.  Amatucci further alleges that the prosecutor did not

subpoena the sole exculpatory witness to testify at Amatucci's

trial.  Although the complaint is unclear as to why, it appears

that the charges against Amatucci were ultimately dismissed.[3]

The November 2003 Incident

        Amatucci's friction with her neighbors was not limited to

Kelly Fitzgerald's relatives.  Amatucci also had difficulty with

neighbors on the other side of her property, Pauline and Robert

Maloney, regarding neighborhood parking.  Further, Amatucci has

had disputes with Norman Bolduc, who lives behind her, regarding

two outbuildings Amatucci claims that she owns but that are

located on Bolduc's property as well as Bolduc's parking his golf

---

        [3]Amatucci alleges that Fitzgerald and other witnesses failed
to appear in Court.  Amatucci also submits a statement from
another individual indicating that the witnesses failed to appear
to prosecute the case against Amatucci.  However, Amatucci has
also submitted copies of two court orders with her complaint that
indicate that her "record of attempted criminal mischief" and her
"record of simple assault" were annulled on June 23, 2003.  I
presume that it is her arrest and charge that were annulled from
her record, since Amatucci claims no conviction was ever entered
in these matters.

cart in such a manner as to infringe Amatucci's property.  Bolduc is Pauline Maloney's brother.

According to Amatucci, her difficulties with the Maloneys arose because the Maloneys repeatedly parked in such a way so as to block Amatucci's driveway access.  Amatucci claims the Maloneys parked this way to retaliate against Amatucci for contacting the police when the Maloneys' grandchildren rode golf carts on Amatucci's driveway late at night.

Amatucci alleges that she has been subjected to ongoing harassment from the Maloneys over the years, but the police have done nothing to protect Amatucci's right not to be harassed. Finally, the police told Amatucci to go to court and attempt to obtain a "stalking order" against the Maloneys, which Amatucci did.  The Maloneys simultaneously sought a "stalking order" against Amatucci.  Amatucci and the Maloneys appeared in the Carroll County Superior Court on November 12, 2003, for a hearing on their mutual requests.  Because both parties desired to have no contact with each other, the judge, from the bench, authorized orders restraining both parties from contacting or communicating with each other or each other's families.  Amatucci interpreted

the word "family" to mean that she was not to contact the Maloneys or any member of their household.

Prior to the November 12 hearing, Amatucci had sought the assistance of legal counsel to resolve the outbuilding issue with Bolduc.  Because the lawyers had not yet acted on her behalf, Amatucci took it upon herself to write a letter to Bolduc insisting on payment for damages Bolduc had caused to the outbuildings in order to avoid litigation over the issue. Amatucci brought the letter with her to Court on November 12, thinking that Bolduc might appear in court with the Maloneys. When Bolduc did not appear, Amatucci mailed the letter to Bolduc on November 13, 2003.

On November 13, 2003, the Superior Court issued a written Order on the requests for stalking orders.  The written order prohibited Amatucci and the Maloneys from contacting or communicating with each other or each other's relatives. Amatucci received this written Order on November 15, 2003, two days after she had mailed the letter to Bolduc.

On November 18, 2003, Pauline Maloney and Bolduc took Amatucci's letter to the Wolfeboro Police Department seeking Amatucci's prosecution for violating the Superior Court's order.

9

On December 29, 2003, defendants O'Brien and Hamilton arrested
Amatucci pursuant to an arrest warrant for violating the stalking
order by writing to Bolduc.

Amatucci claims that O'Brien and Hamilton did not have facts
supporting probable cause to arrest her to present to the issuing
judge in support of the arrest warrant.  Amatucci alleges that
the officers failed to include all of the material facts to the
issuing judge in support of their request for an arrest warrant.
Amatucci alleges that to properly obtain an arrest warrant, the
officers would have had to aver that Amatucci knew, on November
13, 2003 when she sent the letter, that the stalking order
prohibited her from contacting the Maloneys' relatives, and not
just the members of their household.  Accordingly, Amatucci
alleges that the defendant officers must have omitted the fact
that Amatucci, on November 13, 2003, had only been told not to
contact "family members" which was properly interpretable as
"household members."  Amatucci claims that if all of the material
facts known to O'Brien and Hamilton had been prseented to the
judge, the *mens rea* for the offense of knowingly violating a
court order would have been negated.  Therefore, she alleges,

10

probable cause would not have been established and a warrant would not have issued.

Amatucci claims that at her arraignment on this matter, Judge Varney advised the prosecuting officers that they would have to prove a particular definition of "family" in order to convict Amatucci. Amatucci alleges that giving this advice to the officers was outside of the Judge's proper judicial capacity and rendered Judge Varney a coconspirator in her false arrest and detention.

<u>Discussion</u>[4]

A government official may be held personally liable under 42 U.S.C. § 1983 if, acting under color of state law, the official caused the deprivation of a federal constitutional or statutory right. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).[5] Amatucci

_____

[4]The claims as identified and discussed herein will be considered to be the claims raised in the complaint for all purposes. If plaintiff disagrees with this identification of the claims, she must do so by filing a proper objection to this Report and Recommendation or by properly filing a motion to amend the complaint.

[5]42 U.S.C. § 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

11

alleges that she was subjected to false imprisonment and detention by O'Brien and Hamilton when they twice secured her arrest pursuant to arrest warrants that, she claims, were obtained by the defendant officers' failure to communicate material exculpatory facts to the judge issuing the warrants. Amatucci claims that these omissions resulted in the violation of her Fourth Amendment rights as her person was seized by the arresting officers pursuant to improperly obtained arrest warrants.[6]

Amatucci further alleges claims against the remaining named defendants to this action. Amatucci alleges that the Wolfeboro police prosecutor, Dennis Davey, violated her constitutional due process rights by failing to subpoena an exculpatory witness to

---

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

[6]The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

testify at Amatucci's trial.  Amatucci also alleges that Judge
Robert Varney violated her constitutional rights by giving advice
to the Wolfeboro Police Department, an act which she claims lies
outside the judicial function.  Finally, Amatucci seeks to state
a claim against Wolfeboro Police Chief Brian Black, the Wolfeboro
Police Department, and the Town of Wolfeboro, for improperly
training and supervising the police officer defendants in this
case, directly resulting in a violation of Amatucci's rights by
those officers.  I will discuss and address these claims in turn.

1.   <u>False Arrest and Detention Claims Against O'Brien and
     Hamilton</u>

     Presuming the proper issuance of a warrant by a judge in
this case, Amatucci's assertion is that the warrant was issued
based on the misleading impression left by defendants Hamilton
and O'Brien when they intentionally omitted material exculpatory
information from their warrant applications.  "[T]he intentional
or reckless omission of material exculpatory facts from
information presented to a magistrate may . . . amount to a
Fourth Amendment violation."  <u>Burke v. Town of Walpole</u>, 405 F.3d
66, 81 (1st Cir. 2005).  When evaluating allegedly material
omissions from a warrant application, "recklessness may be

13

inferred where the omitted information was critical to the probable cause determination." Id. (citations omitted).

To support her allegation of a violation of her Fourth Amendment rights, Amatucci has alleged that Hamilton misrepresented the nature of the cinder block in Fitzgerald's wheel well, omitted from his warrant application Amatucci's version of events, and omitted the statement of a witness that corroborated certain key elements of Amatucci's story.  While Amatucci has not filed a copy of the warrant application with her complaint, she has filed a copy of Hamilton's incident report and later admissions regarding the size and location of the cinder block, the neutral witness statement and other documents that demonstrate a basis for her assumption that material facts were omitted from the warrant affidavit for the August 2002 arrest. Accordingly, I find that Amatucci has stated the minimum facts necessary to state a claim for a Fourth Amendment violation as it relates to the November 7, 2002 arrest based on an improperly obtained arrest warrant.

Amatucci has similarly stated her presumption that material and exculpatory omissions were made by O'Brien and Hamilton to obtain a warrant for her December 2003 arrest.  Amatucci

specifically alleges that because she had not received a written
order clarifying that she was not allowed to contact Bolduc at
the time she mailed him the November 13, 2003 letter, that a
truthful and complete recitation of the facts to the issuing
judge would have belied the fact that the state did not have
sufficient evidence of the *mens rea* for the crime of knowingly
violating a restraining order to support probable cause.
Amatucci claims that the warrant affidavit, which was not
submitted with the complaint, must have omitted the fact that
Amatucci had not yet received notice that contact with all of the
Maloneys' relatives was forbidden by the superior court order.
Amatucci has thus stated the minimum facts necessary to
demonstrate a Fourth Amendment claim for false arrest and
detention against O'Brien and Hamilton for the December 2003
arrest.

In an Order issued simultaneously with this Report and
Recommendation, I will direct that the False Arrest and Detention
claim for the August 2002 arrest be served on Hamilton.  In that
Order, I will also direct that a False Arrest and Detention claim
be served on both O'Brien and Hamilton for the December 2003
arrest.

15

2.   <u>Prosecutorial Immunity</u>

Prosecutors enjoy absolute immunity from suit under Section 1983 for actions taken within the scope of their prosecutorial duties, even when those actions violate a plaintiff's constitutional rights or the suit is premised on malicious prosecution.  <u>Imbler v. Pachtman</u>, 424 U.S. 409, 427 (1976); <u>see</u> <u>Celia v. O'Malley</u>, 918 F.2d 1017, 1019 (1st Cir. 1990).  If the challenged action of the prosecutor is "intimately associated with the judicial phase of the criminal process," it is a function to which absolute immunity applies.  <u>Imbler</u>, 424 U.S. at 430.

Here, Amatucci alleges that by failing to call a witness to provide exculpatory testimony at trial, Davey violated her constitutional rights.  The decision as to what evidence to present at trial is one that falls squarely within the prosecutor's role in the judicial phase of a criminal trial. Accordingly, Davey enjoys absolute immunity from suit for that decision and I recommend that Davey be dismissed as a defendant to this action.

3.   <u>Judicial Immunity</u>

Judges are absolutely immune from suit for conduct within their judicial capacities unless they act (1) outside the scope

16

of their judicial capacity or (2) "in the complete absence of all jurisdiction." <u>Mireles v. Waco</u>, 502 U.S. 9, 11–12 (1991); <u>Stump v. Sparkman</u>, 435 U.S. 349, 356 (1978); <u>Boyd v. Biggers</u>, 31 F.3d 279, 284 (5th Cir. 1994).  Amatucci attempts to state a claim against Judge Varney for acting outside of his judicial capacity by advising the prosecuting authority that they would have to prove a particular definition of "family" in order to successfully prosecute Amatucci.  Although Amatucci characterizes this statement as "advice" to the prosecuting authority, it appears from the facts alleged by Amatucci, that Judge Varney was simply clarifying that the state had the burden of proof for the *mens rea* of the offense charged.  Discussion of the elements of an offense charged in his Court, or the burden of proof applicable in a particular case, is clearly within a judge's capacity and is a proper exercise of the judicial function. Accordingly, I find that Judge Varney is absolutely immune from liability in this action and should be dismissed as a defendant to this action.

4.   <u>Municipal Liability</u>

Municipalities and local government entities are "persons" within the meaning of § 1983.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  Under New Hampshire law,

17

towns, such as Wolfeboro, are considered local governmental
units.  See N.H. Rev. Stat. Ann. ("RSA") 507-B:1 (1997) (defining
"governmental unit" as "any political subdivision within the
state including any county, city, town . . ., but [not including]
the state or any department or agency thereof.").  In order to
maintain a claim against the town of Wolfeboro, or the Wolfeboro
Police Department, as a municipality under 42 U.S.C. § 1983, the
claim must be grounded upon an unconstitutional municipal custom
or practice and two requirements must be met.  "First, the custom
or practice must be attributable to the municipality, i.e., it
must be 'so well settled and widespread that the policymaking
officials of the municipality can be said to have either actual
or constructive knowledge of it yet did nothing to end the
practice.'"  Miller v. Kennebec County, 219 F.3d 8, 12 (1st Cir.
2000) (quoting Bordanaro v. Mcleod, 871 F.2d 1151, 1156 (1st
Cir.), cert. denied, Everett v. Bordanaro, 493 U.S. 820 (1989)).
Second, the custom must have been the cause of and "the moving
force" behind the deprivation of constitutional rights.  Id. at
1157.  Amatucci has not asserted any facts that demonstrate that
the town of Wolfeboro or the Wolfeboro Police Department engaged
in a custom or policy of allowing or enabling Wolfeboro police
officers to make material omissions in arrest warrant affidavits.

18

I find, therefore, that she has not stated a claim against the town of Wolfeboro or its police department and I recommend that they be dismissed as defendants to this action.

5.   <u>Supervisory Liability</u>

"Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions." <u>Aponte Matos v. Toledo Davila</u>, 135 F.3d 182, 192 (1st Cir. 1998). A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation." <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 43-44 (1st Cir. 1999). There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization." <u>Id.</u> at 44. Here, while Amatucci has described facts that could be liberally construed to allege that Black was supportive of Amatucci's arrest and unwilling to resolve matters directly with Amatucci, she has not alleged any facts which demonstrate that Black either directly participated in, condoned, or authorized in any way, the improper obtaining of an arrest warrant by the omission of material exculpatory information. Accordingly, I cannot find that Amatucci has alleged facts that support a cause of action against

Black, and I recommend that he be dismissed as a defendant from
this action.

Conclusion

For the reasons discussed herein, I recommend that all
claims alleged against defendants Davey, Varney, Black, the town
of Wolfeboro, and the Wolfeboro Police Department, and Black be
dismissed from this action.  In an Order issued simultaneously
with this Report and Recommendation, I will direct that
Amatucci's false arrest and detention claims be served against
defendants Hamilton and O'Brien.

Any objections to this Report and Recommendation must be
filed within ten (10) days of receipt of this notice.  Failure to
file objections within the specified time waives the right to
appeal the district court's order.  See Unauthorized Practice of
Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United
States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:      January 20, 2006

cc:        Josephine Amatucci, *pro se*

20