UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Josephine Amatucci,
    Plaintiff

    v.                                     Civil No. 05-cv-259-SM
                                           Opinion No. 2007 DNH 080
Officer Charles Hamilton
and Officer James O'Brien,
    Defendants

**O R D E R**

Pro se plaintiff Josephine Amatucci brings this action seeking damages for alleged violations of her constitutionally protected rights. See generally 42 U.S.C. § 1983. Specifically, Amatucci claims defendants violated her Fourth Amendment rights when, in order to obtain warrants for her arrest in 2002 and again in 2003, they withheld exculpatory information from the issuing judge. She also advances state common law claims of intentional infliction of emotion distress, negligent infliction of emotional distress, battery, and malicious prosecution.

Pending before the court are the parties' cross-motions for summary judgment. For the reasons set forth below, defendants' motion is granted and plaintiff's motion is denied.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered

by the moving party. See generally Fed. R. Civ. P. 56(e). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere speculation. See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

**Background**

I.   The August 2002 Incident.

On August 16, 2002, Mrs. Amatucci was concerned that a neighbor – Kelly Fitzgerald – had parked her car on Amatucci's property. So, Amatucci asked that it be moved. According to Amatucci, the neighbor's young son (a boy who appeared too young to legally operate a motor vehicle) eventually got into the car, attempted to move it forward, and struck a cement block that was on the ground. Pieces of the broken block then wedged into the car's wheel well, rendering it inoperable, despite the boy's efforts to move it forward. Amatucci claims that when the car's owner discovered the problem, she and her friends and/or family members confronted Amatucci, blamed her for the damage to the vehicle, and, eventually, assaulted her. Amatucci summoned the police.

Officer Charles Hamilton of the Wolfeboro Police Department responded to the call. When Hamilton arrived at the scene, Amatucci complained that the neighbor's car was parked on her property. Hamilton informed her that the car was actually on the State's right-of-way, adjacent to the road. He took measurements to confirm his belief that the car was legally parked. While doing so, he noticed that pieces of a broken cement block were lodged on top of the car's wheel and/or wedged into the wheel well. He then interviewed and obtained written statements from five other witnesses to the incident, all of whom told essentially the same story – one that was decidedly inconsistent with Mrs. Amatucci's.

In sum, those witnesses said that Mrs. Fitzgerald, not her minor son, attempted to move the car and, when she did, it was damaged when it struck the cement block. One witness told Officer Hamilton that shortly before Fitzgerald attempted to move the car, she saw Mrs. Amatucci at the front of the car, "fiddling around" with something. Uniform Witness Statement of Pamela DiFraia, Document no. 53-4, at 10. Another reported that he had seen Amatucci carrying a cement block near the car shortly before Mrs. Fitzgerald attempted to move it. Uniform Witness Statement of Robert Marston, Document no. 53-4 at 8. Plainly, those

witnesses' observations (if true) suggest that Amatucci deliberately placed the block on the car's tire or directly in the car's path shortly before asking the owner to move it.  See also Incident Report prepared by Officer Hamilton, Document no. 53-4 at 3 (reporting that Mrs. Fitzgerald told him that when she parked the car, there was not a cement block on the ground near the vehicle).  Witnesses also told Hamilton that Amatucci, rather than any of the other people present, had been the aggressor and kicked a woman who was present during the events in question.

Based on his observations at the scene, and given the witness accounts of what had transpired, Officer Hamilton concluded that Amatucci had committed a simple assault and criminal mischief.  Subsequently, he sought a warrant for Amatucci's arrest on those charges.  In support of his request for the arrest warrant, Hamilton presented the magistrate with an affidavit in which he summarized his own observations, as well as the statements he had obtained from the various witnesses.  He also appended to that affidavit his entire investigative file, including complete copies of all the witness statements he had obtained.

Officer Hamilton recounted, among other things, Mrs. Amatucci's version of the events, noting that "Josephine Amatucci told me that Mrs. Fitzgerald's car and Mrs. Silvestri were trespassing on her property [and] that Ms. Fitzgerald had driven over the concrete block that she (Amatucci) had placed over a broken metal post." Document no. 53-5 at para. 5. Hamilton went on, however, to express his own assessment that, in light of his observations at the scene and the several witness statements that contradicted Mrs. Amatucci's version of the events, Amatucci was not being entirely truthful. Hamilton stated "It is my opinion that if Mrs. Fitzgerald's vehicle had struck the concrete block it would not have been able to lodge on top of the vehicle's tire." Id.

Based on Officer Hamilton's submissions, the magistrate issued a warrant for Amatucci's arrest and, on November 7, 2002, Officer Hamilton went to Mrs. Amatucci's home to serve it upon her. But, rather than taking Amatucci into custody, Hamilton offered to allow her to drive herself to the police station, so she could drive herself home after the booking process. Amatucci availed herself of that offer. Subsequently, when the witnesses subpoenaed by the prosecutor failed to appear for trial, the court dismissed the charges against Mrs. Amatucci.

II.  <u>The November 2003 Incident</u>.

As the Magistrate Judge observed in his Report and Recommendation:

> Amatucci's friction with her neighbors was not limited to Kelly Fitzgerald's relatives.  Amatucci also had difficulty with neighbors on the other side of her property, Pauline and Robert Maloney, regarding neighborhood parking.  Further, Amatucci has had disputes with Norman Bolduc, who lives behind her, regarding two outbuildings Amatucci claims that she owns but that are located on Bolduc's property as well as Bolduc's parking his golf cart in such a manner as to infringe Amatucci's property.  Bolduc is Pauline Maloney's brother.

Document no. 12 at 7-8.  Eventually, the Maloneys and Amatucci sought mutual restraining orders.  On November 12, 2003, the parties appeared in state court for a hearing on those requests. The judge granted both requests and, from the bench, told both parties that they could have no contact with each other or any members of their respective families.  <u>See</u> Transcript of hearing (document no. 1-2), Exhibit 14 at 8-9.  The next day, the court issued its written order, which provided that "the parties are enjoined from having <u>any</u> contact or communication with the other respective party by <u>any</u> means or with that [party's] relatives or members of that [party's] household."  Document no. 53-8 (emphasis in original).

On November 15, 2003, Mr. Bolduc received a letter from Amatucci referencing their ongoing property dispute and demanding that he pay her $1,000 or she would bring suit against him. Believing that Amatucci had violated the court's order, Mr. Bolduc and his sister, Mrs. Maloney, went to the police station to file a complaint. There, they spoke with Officer James O'Brien. After reviewing the relevant evidence, O'Brien determined there was probable cause to believe that, by sending the letter to Bolduc, Amatucci had violated the court's protective order – that is to say, she knowingly and intentionally initiated contact with a member of Maloney's family (i.e., her brother). Accordingly, he prepared and submitted an affidavit in support of a warrant for Amatucci's arrest. That warrant issued on December 2, 2003.

Shortly thereafter, Officers O'Brien and Hamilton went to Mrs. Amatucci's home to serve the warrant. Because she was accused of having violated a protective order, state law required the officers to take her into custody, which they did. See generally N.H. Rev. Stat. Ann. 173-B:9 I(a). She asked the officers to unlock the door to her house so the guests she was expecting could let themselves in. The officers complied and then transported her to the Carroll County House of Corrections

without incident.  While she was detained at the house of corrections, Amatucci claims she was subjected to a battery when corrections officers searched her (presumably during the intake process).  Although she did not name those corrections officers as defendants, she seeks to hold Officers Hamilton and O'Brien liable for that alleged battery.

## Discussion

I.   Fourth Amendment Claims.

As to her arrest in 2002, Amatucci asserts that Officer Hamilton secured the underlying arrest warrant by knowingly or recklessly failing to provide the issuing magistrate with material exculpatory facts – facts which, if disclosed, she claims would have undermined any finding of probable cause to arrest (i.e., her version of the events in question).  She makes a similar claim against Officer O'Brien with regard to her arrest in 2003, claiming that he knew or should have known that, when she mailed the letter to Mr. Bolduc (allegedly in violation of the protective order): (1) she had not yet received a copy of the court's detailed written order; and (2) at the hearing, the court told her only that she could have no contact with any of the Maloney "family members" – a phrase she says is limited to

"household members" and, therefore, does not apply to Mr. Bolduc (who does not live in his sister's home).

The Court of Appeals for the First Circuit has discussed the governing legal principles in this area at length.

> A Fourth Amendment violation may be established if a plaintiff can show that officers acted in reckless disregard, with a high degree of awareness of the probable falsity of statements made in support of an arrest warrant. Similarly, the intentional or reckless omission of material exculpatory facts from information presented to a magistrate may also amount to a Fourth Amendment violation. Reckless disregard for the truth in the submission of a warrant application may be established where an officer in fact entertained serious doubts as to the truth of the allegations or where circumstances evinced obvious reasons to doubt the veracity of the allegations in the application. In the case of allegedly material omissions, recklessness may be inferred where the omitted information was critical to the probable cause determination.

Burke v. Town of Walpole, 405 F.3d 66, 81 (1st Cir. 2005) (citations and internal punctuation omitted).

Given the undisputed facts of record, both Officer Hamilton and Officer O'Brien are entitled to judgment as a matter of law as to Amatucci's Fourth Amendment claims. When Officer Hamilton sought a warrant for Amatucci's arrest in 2002, he submitted to the issuing magistrate not only a description of what he observed

at the scene and the conclusions he drew from the evidence, but also the written witness statements from each of the eyewitnesses <u>and</u> a statement summarizing Mrs. Amatucci's version of events. He was not required to do anything more.

With regard to Amatucci's arrest in 2003, Officer O'Brien was not obligated to adopt Amatucci's overly narrow interpretation of the phrase "family members" and reasonably concluded that she had violated the court's protective order by initiating contact with a member of Mrs. Maloney's family – that is, her brother, Mr. Bolduc.  Even if Amatucci had not yet received a copy of the court's written protective order when she sent the letter to Bolduc, the court orally informed her at the hearing that she was enjoined from contacting Mrs. Maloney and any members of her family.  Transcript of hearing (document no. 1-2), Exhibit 14 at 8 ("In other words, you would stay – you would have no contact <u>or</u> <u>communication</u> with either her [i.e., Mrs. Maloney] or a member of her family." (emphasis supplied)). Plainly, Officer O'Brien had probable cause to believe Amatucci violated that protective order.

II.  <u>State Law Claims</u>.

Having resolved Amatucci's federal claims in favor of defendants, the court must next determine whether it is appropriate to exercise supplemental jurisdiction over her state law claims.  Given that discovery has closed, the parties have submitted dispositive motions, the case is scheduled for trial in approximately three weeks, and plaintiff's claims do not raise any novel or complex issues of state law, the court concludes that, in the exercise of its discretion, it is appropriate to address plaintiff's state law claims.  <u>See generally</u> 28 U.S.C. § 1367(c).  <u>See also</u> <u>Camelio v. American Fed'n</u>, 137 F.3d 666, 672 (1st Cir. 1998) (discussing four factors courts should consider when determining whether to exercise supplemental jurisdiction over state law claims).

Amatucci's malicious prosecution claim fails as a matter of law because, among other things, defendants had probable cause to believe that she had engaged in the criminal conduct with which she was charged in 2002 and again in 2003.  <u>See generally</u> <u>Stock v. Byers</u>, 120 N.H. 844, 846 (1980) ("To succeed in an action for malicious prosecution, the plaintiff must prove that he was subjected to a criminal prosecution instituted by the defendant <u>without probable cause</u> and with malice, and that the criminal

proceeding terminated in his favor.") (emphasis added) (citation and internal punctuation omitted).  Moreover, even viewing the record before the court in the light most favorable to Amatucci, a reasonable, properly instructed jury could not conclude that either defendant was motivated by malice in bringing charges against her.

Amatucci's battery claim fares no better.  In support of that claim, she asserts that "without [her] consent, defendants intentionally, harmfully, and offensively touched Plaintiff by handcuffing her."  Amended complaint (document no. 35) at para. 36.  See also Plaintiff's memorandum in support of summary judgment (document no. 58) at 13.  As the court of appeals for this circuit has observed, the common law tort of battery "did not require proof that the defendant intended to injure another or to threaten her with harm.  The slightest willful offensive touching of another constituted a battery[,] regardless of whether the defendant harbored an intent to do physical harm."  United States v. Bayes, 210 F.3d 64, 68 (1st Cir. 2000).

Presumably, most citizens would agree that being handcuffed is an unpleasant, and even an "offensive" form of touching.  But, when undertaken as part of a lawful arrest and when done without

employing unreasonable or excessive force, handcuffing is a privileged touching and, therefore, not actionable.  See N.H. Rev. Stat. Ann. 627:5 I ("A law enforcement officer is justified in using non-deadly force upon another person when and to the extent that he reasonably believes it necessary to effect an arrest or detention.").  See also Graham v. Connor, 490 U.S. 386, 396 (1989) ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").  Here, Amatucci does not claim that the officers used excessive force in handcuffing her or that she sustained any injuries; she simply claims that she was subjected to an unwanted and offensive contact when the officers handcuffed her.  Without more, however, the mere fact that the officers handcuffed Amatucci incident to a lawful arrest does not give rise to a viable claim for battery.

   Next, Amatucci claims that defendants are vicariously liable for the alleged battery upon her at the house of correction.  See Plaintiff's memorandum (document no. 76) at 17 ("Defendants indirectly caused an unknown officer at the Carroll County Jail to intentionally, harmfully, and offensively touch Plaintiff when strip-searching her.").  Amatucci has, however, not pointed to

any facts which, even if credited as true, would support imposing liability on the police officers for injuries Amatucci may have sustained at the county house of corrections.  Defendants are, then, entitled to summary judgment as to that claim as well.

   Finally, defendants are entitled to judgment as a matter of law as to Amatucci's claims for intentional and negligent infliction of emotional distress.  With regard to the former, the New Hampshire Supreme Court has adopted the provisions of section 46 of the Restatement (Second) of Torts and recognized that "[o]ne who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for that emotional distress."  Konefal v. Hollis/Brookline Coop. Sch. Dist., 143 N.H. 256, 260 (1998) (citation omitted).  To prevail on a claim of intentional infliction of emotional distress, a plaintiff must point to conduct on the part of the defendant that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46, cmt. d.  Here, nothing about the officers' conduct was "extreme," "outrageous," or "atrocious."  The officers had probable cause to believe Amatucci had engaged in the criminal conduct with which she was charged,

they properly sought and obtained warrants for her arrest, and they executed those warrants in a professional manner.

As to Amatucci's claims for negligent infliction of emotional distress, "expert testimony is required to prove physical symptoms suffered from alleged negligent infliction of emotional distress." Silva v. Warden, 150 N.H. 372, 374 (2003) (citing Thorpe v. State, 133 N.H. 299, 305 (1990)). See also Palmer v. Nan King Rest., Inc., 147 N.H. 681 (2002). Amatucci has, however, failed to identify any medical expert(s) and the time for doing so has passed. Absent expert testimony, she cannot sustain her burden of proof. Defendants are, then, entitled to judgment as a matter of law on her claims for negligent infliction of emotional distress.

### Conclusion

Plaintiff's motion to amend her motion for summary judgment (document no. 57) is granted. But, for the foregoing reasons, as well as those set forth in defendants' memoranda, defendants are entitled to judgment as a matter of law as to all remaining claims in plaintiff's amended complaint. Accordingly, defendants' motion for summary judgment (document no. 53) is granted and plaintiff's motion for summary judgment (document no.

55) is denied. Defendants' motions to strike (document nos. 74 and 77) are denied as moot.

The Clerk of Court shall enter judgment in favor of defendants and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

June 25, 2007

cc: Josephine Amatucci, pro se
    R. Matthew Cairns, Esq.
    Lisa Lee, Esq.