```
                   UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE
```

Josephine Amatucci,
    Plaintiff

    v.                                      Civil No. 05-cv-259-SM
                                                Opinion No. 2007 DNH 126
Officer Charles Hamilton
and Officer James O'Brien,
    Defendants

## O R D E R

By order dated June 25, 2007, the court granted defendants' motion for summary judgment as to plaintiff's section 1983 claim that defendants violated her Fourth Amendment rights when, in order to obtain warrants for her arrest in 2002 and again in 2003, they withheld exculpatory information from the issuing judge. The court also granted defendants' motion for summary judgment as to plaintiff's state law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, battery, and malicious prosecution. Invoking the provisions of Fed. R. Civ. P. 54(d) and 42 U.S.C. § 1988(b), defendants now move for an award of approximately $33,000 in costs and attorney's fees. For the reasons set forth below, that motion is granted in part, and denied in part.

**Standard of Review**

Although section 1988 vests the court with discretion to award costs and fees to a "prevailing party," the court of appeals for this circuit has made it perfectly clear that "decisions to grant defendants their fees are, and should be, rare." Tang v. Department of Elderly Affairs, 163 F.3d 7, 13 (1st Cir. 1998).  The Supreme Court has held, as well, that, before a court may award attorney's fees to a prevailing defendant under section 1988, it must first conclude that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Hughes v. Rowe, 449 U.S. 5, 14 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)).  The Court went on to observe:

> The plaintiff's action must be meritless in the sense that it is groundless or without foundation.  The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.  As we stated in Christiansburg, . . . . "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."

Hughes, 449 U.S. at 14-15.

If a prevailing defendant demonstrates that he or she is entitled to an award of attorney's fees, the defendant must then establish the reasonableness of the fee award sought.  In this circuit, the preferred method of calculating fee awards is the "lodestar method," by which "the number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate."  Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d 331, 337 (1st Cir. 1997)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  See also In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litigation, 56 F.3d 295, 305 (1st Cir. 1995).

**Discussion**

I.   Aspects of Plaintiff's Complaint were Plainly Frivolous.

In support of their motion for costs and attorney's fees, defendants advance a persuasive, well-supported argument that, long before she initiated this litigation, plaintiff knew (or certainly should have known) that at least some of her claims against them were frivolous, unreasonable, and groundless but, nevertheless, pursued them with great vigor.  Because plaintiff does not contest the factual underpinnings of defendants' motion, the court has assumed that those facts are undisputed.  Cf. Local Rule 7.2(b)(2) (uncontested material facts are deemed admitted).

Among other things, defendants point out that during pre-trial motion practice, plaintiff filed more than fifty motions – most of which were denied, but all of which required a response. As an example of plaintiff's frivolous and/or harassing conduct, defendants point to her obstinate refusal to accept the court's decision to preclude her from introducing any expert witness testimony.

> Plaintiff's expert disclosure deadline was August 1, 2007. She did not disclose an expert, and consequently, Defendants moved to exclude expert testimony on November 16, 2006. See Document No. 52. The Court granted this motion on December 15, 2006. Plaintiff unsuccessfully moved for reconsideration.
>
> Unwilling to accept the Court's decision, Plaintiff went on to file four (4) additional motions asking the Court to permit her to introduce expert testimony. On February 27, 2007, Plaintiff filed a Motion to Extend the Deadline for Expert Witness for Testimony. See Document No. 81. The Court denied this motion on February 28, 2007. Ignoring the Court's order, Plaintiff filed a "Disclosure of Experts" on March 1, 2007. See Document No. 84. Then, on March 8, 2007, the Plaintiff again filed a Motion to Extend Time for Expert Testimony. See Document No. 88. The Court denied this motion, informing the Plaintiff: "You have three prior rulings on this issue." See Order dated March 9, 2007. Despite this clear ruling, Plaintiff filed another motion seeking to introduce experts entitled "Motion to Include Two Witnesses for Trial." See Document No. 105. The Court denied this motion on April 27, 2007.

Defendant's memorandum at 6-7.

Defendants also point out that, prior to initiating this lawsuit, plaintiff asked the New Hampshire Attorney General's Office to investigate her claim that Officer Hamilton arrested her without the benefit of an underlying warrant.

> Before filing this lawsuit, Plaintiff reported her claims to the Attorney General's Office, which conducted an investigation about the arrest warrants. On October 20, 2004, an investigator from the Attorney General's Office wrote to the Plaintiff to inform her that an investigation revealed her complaints to be "unfounded." See Letter dated October 20, 2004, attached hereto as Exhibit 1. Plaintiff again contacted the Attorney General's Office regarding the warrant. On April 7, 2005, Plaintiff was informed that her complaints against the Wolfeboro Police Department and Officer Charles Hamilton were "unfounded" because Judge Varney completed an affidavit authenticating that he signed the arrest warrant on October 30, 2002. See Letter dated April 7, 2005 attached hereto as Exhibit 2. The Attorney General's Office provided the Plaintiff a copy of an affidavit from Judge Varney, which verified his signature and explained that he signed it at his law office and not the courthouse. See Affidavit of Judge Varney, attached hereto as Exhibit 3.
>
> Even though the Plaintiff was in possession of the warrant for the November 7, 2002 arrest, an affidavit of Judge Varney and two letters from the Attorney General's Office, Plaintiff filed a federal lawsuit against Officer Hamilton for failing to have a warrant for her arrest on November 7, 2002. Moreover, Plaintiff failed to include a copy of the arrest warrant with her Complaint so that the Court could accurately assess her claims on preliminary review. Her lawsuit was frivolous. Her conduct was

>  unreasonable.  Plaintiff's pro se status does not
>  excuse such conduct.

Defendant's memorandum at 3 (footnote omitted).

Plaintiff's claim that Officer Hamilton arrested her without the benefit of an underlying warrant was plainly frivolous.  And, given the prior investigation performed by the Attorney General's office, and the two reports provided to plaintiff by that office, plaintiff knew or should have known that her claim was frivolous.  The court also concludes that a good deal of plaintiff's motion practice was frivolous and/or pursued simply as a means by which to harass defendants.  As defendants point out, plaintiff's intent to harass them, as well as any witnesses they might call at trial, is evidenced by the motion she filed, captioned "Motion re: Defendants' Witnesses and Their Lies" (document no. 156).  In that document, plaintiff wrote: "Defendant[s] should warn [their witnesses] that if they lie under oath, they will be sued, and before this case is over, each and every liar will get what's coming to them. . . . [G]o ahead and call them, but warn them, this is war."

There are, however, aspects of plaintiff's complaint that, while meritless, were not so plainly frivolous, unreasonable, or

6

groundless as to support an award of attorney's fees.  For example, plaintiff's claim against Officer O'Brien, arising out of plaintiff's violation of a restraining order (and dealing with the distinction between "family members" and "household members") falls comfortably within the category of meritless claims, but short of frivolous.  Given plaintiff's strained, but not-entirely-implausible, interpretation of the state court's oral explanation of the restraining order, this court cannot fairly conclude that plaintiff's claims against Officer O'Brien were so outlandish or unsupported as to be frivolous, notwithstanding the fact that they were without legal merit.

The court need not detail the factual support defendants provide for their motion.  It is sufficient to observe that it is persuasive.  It does, however, bear noting that there were certainly some aspects of plaintiff's complaint that did not cross the threshold into the realm of frivolity, just as there were aspects of her pre-trial motion practice that were not harassing.

It also probably bears noting that it appears plaintiff is more than simply unwilling to see the weakness of her claims; she seems incapable of coming to (or being lead to) that realization.

For example, in her initial objection to defendants' motion for fees, plaintiff writes:

> Plaintiff would like Attorney $$$Lisa [sic] Lee [co-counsel for defendants] to reflect and determine who is really responsible for the Plaintiff's Complaint to go forward in the courts.  Plaintiff only wrote a Complaint to the court, but it was [Magistrate] Judge Muirhead, with the approval of [Senior Judge] Joseph A. DiClerico Jr. who got the summons and authorized the United States Marshall to effect service of the summons upon Defendants.  They set the action of this case. They accused the defendants of violating Plaintiff's Fourth and Fourteenth Amendment rights of due process by subjecting her to false arrest and detention. . . . So if the claim is frivolous, unreasonable, or groundless, the lawyers should be sending their bill to [Magistrate] Judge Muirhead and Judge DiClerico, Jr.
>
> * * *
>
> So if Judge McAuliffe has stated that Plaintiff's claims were groundless he is really saying that the two judges made a manifest error of law when they went forward with this case.  They cost the lawyers all this money for nothing.  They had no right to approve such a frivolous Complaint if it was not Constitutional.  They are guilty of indiscretion, and as Attorney Lisa Lee states, the claims lacked merit, and the claim was brought to harass or embarrass the defendants.  The judges are guilty of all this indiscretion.  They made false statements when they supported Plaintiff's claims. etc. etc. etc.  They broke the law, they should be prosecuted by the lawyers.

Plaintiff's objection (document no. 167) at 1-2.

The court notes plaintiff's somewhat unusual response because it raises an interesting question: when, if ever, is it

appropriate to award attorney's fees against a party who is incapable of distinguishing between frivolous and meritorious claims, particularly in a case (like this) where the plaintiff does not have a documented history of frivolous or vexatious litigation and the circumstances prompting her suit were fairly unique and, therefore, unlikely to be repeated.  That is to say, plaintiff does not appear to be a serial litigator, or a person who needs to be dissuaded from pursuing frivolous or vexatious federal litigation in the future.

As defendants candidly acknowledge, courts have recognized that in certain circumstances involving pro se plaintiff's and fee requests, an effort should be made to determine whether the plaintiff actually appreciated (or had the capacity to appreciate) the difference between a meritorious claim and one that was entirely frivolous.  See, e.g., Hughes, 449 U.S. at 15; Miller v. Los Angeles County Bd. of Educ., 827 F.2d 617, 620 (9th Cir. 1987); Greenier v. Pace, Local No. 1188, 245 F. Supp. 2d 247, 250 (D.Me. 2003).  Here, based upon a review of the content of plaintiff's voluminous filings, as well as the various correspondences authored by plaintiff and contained in the record, the court is persuaded that she is not entirely capable of distinguishing between meritorious and frivolous legal claims.

While that fact does not excuse plaintiff's inappropriate and improper conduct in this case, it certainly helps to explain it. And, given the totality of circumstances presented in this case, the court is persuaded that principles of equity and fairness counsel against ordering plaintiff to compensate defendants for all of their costs and legal fees.  Moreover, as discussed below, defendants have failed to adequately document those expenses – another factor that counsels in favor of a reduced award of fees.

II.  Defendants' Submissions are Deficient.

To prevail on their request for an award of attorney's fees, defendants must first demonstrate that this is one of those rare cases in which an award is warranted.  As discussed above, they have done so.  In addition, however, they must also establish the reasonableness of: (1) the time billed by their attorneys for various tasks related to this case; and (2) the rates charged for those legal services.

As to the former, defendants must provide sufficiently detailed contemporaneous records of the time their attorneys spent and tasks they performed to allow the court to determine their reasonableness.  See Tennessee Gas Pipeline Co. v. 104 Acres of Land, 32 F.3d 632, 634 (1st Cir. 1994).  They have not

10

done so.  Instead, defendants suggest that, "[s]hould the Court wish to see Defendants' itemized bills, Defendants ask that they be permitted to submit them in camera."  Defendants' motion (document no. 166) at 8.[1]

Defendants do not indicate why their itemized bills should not be part of the public record in this case, nor have they submitted them to the court along with an accompanying motion to seal.  It should go without saying that, absent those itemized time charges, the court has no way of accurately determining whether all of the time for which counsel seeks reimbursement was

---

[1] The court is not inclined to review counsel's pleadings and, if it finds them deficient in some way, offer suggestions as to how they might be supplemented or made more persuasive.  This is, after all, an adversarial system, not a negotiation.  If counsel believes a legal argument or an element of evidence is necessary to support their client's position, they should submit that material to the court.  They should not expect the court to be soliciting additional legal argument or factual support it thinks might be persuasive.  See generally International Tape v. Technicote, 97-cv-084-SM (April 21, 2000) ("But the court cannot act as [one party's] lawyer.  At the very least, the other parties could legitimately complain, and it would not be appropriate for a judge to review the sufficiency of legal arguments he or she has posited.  Besides, the court has more than enough to do considering and deciding the legal matters properly presented in scores of other cases.  In short, the court cannot assume the role of adviser, advocate, or legal counsel to any of the parties.  Counsel is no doubt busy and anxious to practice in as efficient a manner as possible, but shifting research, pleading, and briefing responsibilities to the court is not a viable option.") (citations omitted).

reasonable.  See generally Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.  The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984) ("[H]enceforth, in cases involving fee applications for services rendered after the date of this opinion, the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance.").

    Additionally, it probably bears noting that defendants have also failed to adequately support their assertion that the hourly rates at which their attorneys billed their services are reasonable.  Ordinarily, counsel demonstrate the reasonableness of their hourly billing rates by submitting an affidavit (or affidavits) from other attorneys in the community who are

familiar with their work product and reputation and who affirm that counsels' hourly rates are reasonable and comparable to those charged by similarly skilled attorneys in the area. Of course, there are other ways an attorney might demonstrate the reasonableness of his or her billing rate. For example, counsel might provide the court with citations to (or copies of) other cases, involving similar issues, in which the court approved his or her request for fees and concluded that the hourly billing rate was reasonable.

Here, defendants have provided the court with the affidavit of one of their own attorneys, who simply represents that the fees charged by him and his associate are reasonable and consistent with those charged by attorneys of comparable skill and training, and that the overall fees charged in this case are reasonable. Plainly, more is necessary.

## Conclusion

This case presents an unusual mix of factors. Defendants have persuasively argued that some of plaintiff's claims were patently frivolous and a reasonable person would have recognized them as such long before filing a federal civil rights suit. Defendants have also established that a good deal of plaintiff's

pre-trial motion practice was unnecessary, flew in the face of prior orders from this court, and might well have been pursued with an intent to harass defendants (particularly Officer Hamilton, at whom plaintiff has directed numerous venomous rants).

On the other hand, not all of plaintiff's claims can properly be viewed as having been frivolous or unfounded.  And, while the court has no way of knowing plaintiff's subjective motivations in pursuing this case, her behavior, as reflected in her numerous filings, suggests that she is less than fully capable of distinguishing between legally meritorious claims and those that are so lacking in support as to be frivolous.  Given that plaintiff has no history of vexatious or harassing litigation in this court, there would appear to be little cause to seek to deter her from similar conduct in the future. Finally, as noted above, defendants have not adequately supported their request for attorney's fees insofar as they have not demonstrated the reasonableness of the time counsel devoted to various matters related to this case, or the reasonableness of the rate at which counsel billed for their work.

For the foregoing reasons, and based on the totality of circumstances presented in this case, the court, in the exercise of its discretion, concludes that an award of attorney's fees is warranted in this case, albeit a substantially reduced award. The sum of $5,000 represents a fair, just, and equitable award of costs and fees to defendants given the circumstances discussed above. Accordingly, defendants' motion for attorney's fees (document no. 166) is granted in part, and denied in part. Pursuant to 42 U.S.C. § 1988, plaintiff is hereby ordered to pay defendants the sum of Five Thousand Dollars ($5,000.00) as reasonable attorney's fees and costs.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 11, 2007

cc: Josephine Amatucci, pro se
    R. Matthew Cairns, Esq.
    Lisa Lee, Esq.